# Philadelphia Trust, etc., Company *versus* Lippincott, surviving Executor.

By virtue of the Act of February 24, 1834 (P. L., 73), testamentary powers of sale of real estate vested in two or more executors may be exercised by a surviving executor, unless the testator shall have otherwise provided. A testator gave a power of sale of real estate to his three executors, whom he nominated in his will. He further directed that "if any of my executors shall die, or decline the executorship, it shall be the duty of the acting executors to appoint another in the place of the executor so dying or declining . . . . . with the same rights and powers as are given to the executors named in this my will." Vacancies caused by the death of two of said executors were not filled, as directed by the testator. *Held,*

(1) That said direction in the will was not to be construed as such a provision by the testator as would exclude the operation of said Act, so as to prevent the sole surviving executor from exercising the power of sale originally vested in the three executors.

(2) That while the Orphans' Court might, under the Act of April 10, 1849, § 2, (P. L,, 597), appoint a trustee or trustees in place of those who died, yet it was not necessary that such action should be taken in order that the power of sale might be lawfully exercised.

(3) That the sole surviving executor, in execution of said power of sale, could convey a good and marketable title to the testator's real estate.

April 9, 1884.   Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT and CLARK, JJ.   GREEN, J., absent.

ERROR to the Court of Common Pleas, No. 2, of *Philadelphia county*: Of January Term, 1884, No. 228.

This was an amicable action by J. Dundas Lippincott, surviving executor and trustee under the will of James Dundas, deceased, against The Philadelphia Trust, Safe Deposit and Insurance Company, trustee under the will of William Richardson, deceased.   The parties submitted the following case stated for the judgment of the court as upon a special verdict:

1. James Dundas died in the city of Philadelphia, on the fourth day of July, 1865, leaving a will, a copy of which is annexed hereto, which said will was duly admitted to probate in the office of the Register of wills for Philadelphia county, and letters testamentary thereon were granted to Joshua Lippincott, Richard Smethurst, and James Dundas Lippincott, the executors in the said will named.

2. Richard Smethurst died on the eighteenth day of April, 1867, and Joshua Lippincott died on the twenty-third day of October, 1880.   The vacancies created by their deaths have not been filled, and James Dundas Lippincott is now the sole surviving executor and trustee under the said will.

3. At the time of his death James Dundas was seised in fee of thirteen undivided thirty-second parts of a certain tract of land situated partly in Branch and partly in Norwegian townships, Schuylkill county, Pennsylvania, the same being more particularly described in a deed from William Wagner and wife, and Benjamin Nehf and wife, to James Dundas, William Richardson, Joshua Lippincott, and Benjamin W. Richards, bearing date March 30, 1847, and recorded in the office for recording deeds, etc., in Schuykill county, in Deed-book No. 27, page 278.

4. At an Orphans' Court for Philadelphia county, held on the seventeenth day of March, 1883, the petition of J. Dundas Lippincott, sole surviving executor of James Dundas, deceased, was presented, setting forth, among other things, that under the powers contained in said will said petitioner, as surviving executor aforesaid, was about to sell at public sale certain coal lands belonging to said estate, situate in the county of Schuylkill, and also certain unproductive real estate situate in the city of Philadelphia; that said petitioner was, under the provisions of said will, the owner of sixteen equal fortieth parts or shares of the residuary estate of said testator, including the real estate then about to be sold; that said petitioner was desirous of becoming a bidder at the proposed sale of said lands for the purpose of protecting his interests therein, which he was advised as executor he could not pro-

perly do without the authority of said court, and he further desired, for the benefit and protection of all parties interested in the said real estate and the sale thereof, that the same be had and conducted under the direction and control of a Master to be appointed for the purpose by said court. The said petitioner therefore prayed said court to make an order that he be authorized and permitted to bid at the sale or sales of said lands, and that a Master be appointed for the purpose of conducting said sales. Whereupon the said court granted leave to said petitioner to bid at any and all sale or sales of said real estate referred to in said petition, and ordered that Henry C. Olmsted, Esq., be appointed Master to conduct the said sale or sales to be made as aforesaid. And at an Orphans' Court, held on the seventh day of July, A. D., 1883, the said Henry C. Olmsted, Esq., Master aforesaid, made report that said properties were exposed at public sale by the Messrs. Freeman at the Philadelphia Exchange, on Wednesday, June 6, 1883, at twelve o'clock, after due notice being given of the time and place of sale, and that parcel No. 1, being an undivided interest in the coal lands known as the Leonard Read Tract, containing twenty-nine acres, more or less (being the premises in question), was sold to the Philadelphia Trust, Safe Deposit and Insurance Company, at the rate of $1,000 per acre, whereupon the said court, upon consideration of said report, ratified and confirmed said sale (inter alia), and authorized the said surviving executor of James Dundas, deceased, to execute the necessary and proper conveyances and assurances of the interest of the said James Dundas, deceased, at the time of his decease of and in the said real estate as to parcel No. 1 thereof aforesaid, to the said The Philadelphia Trust, Safe Deposit and Insurance Company.

The said J. Dundas Lippincott, sole surviving executor and trustee under the last will and testament of James Dundas, deceased, the plaintiff, has offered to execute and deliver to the Philadelphia Trust, Safe Deposit and Insurance Company, trustees as aforesaid, a fee simple deed in the usual form for the said premises, but the said defendant has refused to receive the same, alleging that the said plaintiff does not, under the will of the said James Dundas, show in himself the lawful authority and power to convey the title to the said premises.

If the court shall be of opinion that under the will of James Dundas, deceased, the said J. Dundas Lippincott, sole surviving executor as aforesaid, has the lawful authority and power to convey the title to the said premises to the defendant, then judgment is to be entered for the said plaintiff in the sum of $12,187.50; but if the court shall be of a contrary opinion, then judgment is to be entered for the defendant; either party to be at liberty to sue out a writ of error.

The clauses of the will bearing upon the point are:—

*Item Fourteenth.*—"I give to my executors hereinafter named, full power and authority to sell and dispose of, either at public or private sale, the whole or any part of my estate, real or personal, without application to the Orphans' Court, or any other court, either for the purpose of effecting a partition among the said devisees or for the purpose of making a partition or division of any lands that I may own in Schuylkill county, in common with others, or in carrying out the general purposes of this my will; and to sign, seal, execute, acknowledge and deliver all necessary deeds and conveyances for the purposes aforesaid, and without any liability on the part of the purchaser as to the application of the purchase-moneys; . . . . .

*Item Fifteenth.*—"All sales and conveyances to be made by my executors, are to be clear of any charge or lien on account of any legacies, annuities, or bequests herein contained, and of any trusts herein or hereby created or declared."

*Item Sixteenth.*—"I hereby order and direct that all the powers of sale or investments created by or arising out of this my will, shall be executed without any application to any court of any county or jurisdiction in which my estate may lie; and it is my will that my said executors shall not be personally liable for the exercise of the said powers. Provided it be done with good faith and intention, each of my said executors shall be liable for his own acts only, and not for the acts of his co-executors, to which he has not consented. A majority of my said executors shall be competent to exercise all the powers given by this my will."

*Item Seventeenth.*—"If any of my executors shall die, or decline the executorship, it shall be the duty of the acting executors to appoint another in the place of the executor so dying or declining, and to make such conveyances and do such acts as may invest the said substituted executor, from time to time, as occasion may arise, with the same rights and powers which are given to the executors named in this my will."

*Item Eighteenth.*—"I nominate and appoint my friends, Joshua Lippincott, Richard Smethurst, and my grandnephew, James Dundas Lippincott, executors of this my last will and testament.

The court, after argument, entered judgment for the plaintiff on the case stated, saying: "Under the Act of 1834 the power of sale survived to the plaintiff, unless the testator has directed otherwise. We do not regard item 17 of the will as such a direction." The defendants took this writ of error, assigning for error the said judgment.

*Samuel Dickson* (*R. L. Ashhurst* with him), for the plaintiffs in error.—The Acts of 1800 and 1834 provide that testamentary powers of sale without express words of survivorship may be exercised by surviving trustees, *unless otherwise directed by the testator.* The text and context of this will show that the testator has provided otherwise. It is difficult to imagine a stronger mode for the testator to express his intent that the power should not be exercised by a surviving executor than in the words of the seventeenth item. viz.:

"If any of my executors shall die, or decline the executorship, *it shall be the duty* of the acting executors to appoint another *in the place* of the executor so dying or declining, and to make such conveyances and do such acts as may invest the said substituted executor *from time to time,* as occasion may arise, with the same rights and powers which are given to the *executors named* in this my will."

The words "it shall be the duty" are mandatory; they impose a trust which would be compelled by the court: Doe d. Dupleix *v.* Roe, 1 Anst., 86 ; Caswell *v.* Allen, 7 Johns., 63. In Hulme *v.* Hulme, 2 My. & K., 682, the intent that there should continue to be two trustees was not nearly as strong as in this case, yet a retiring trustee was held liable for the acts of the continuing trustee. So in Massachusetts Gen. Hospital *v.* Amory, 12 Pick., 445 ; Phila. & Reading R. R. Co. *v.* Lehigh Nav. Co., 12 Cas., 212. The Orphans' Court has power to fill the vacancies, under the provisions of the Act of April 10, 1849, (P. L., 597), there being active trusts in the will to be administered by the executors.

*John G. Johnson* and *George W. Biddle,* for the defendant in error.—It is clear, under the Acts of March 12, 1800, sec. 1 (Purd. Dig., 417, pl. 64), and February 24, 1834, secs. 13, 14 (Purd. Dig., 418, pl. 71, 72), that the surviving executor can convey a good title unless the testator has directed otherwise ; we submit he has not done so in the seventeenth item, or elsewhere in his will. It will be noticed that he has not, in any instance, given any powers to any of the executors by name, nor has he said that the surviving executor alone shall not exercise them. He has said in the sixteenth item that a majority of the executors shall be competent. But this is enabling, and merely dispenses with the concurrence of all the executors, and meets the possibility of all three not concurring in any act requiring discretion. The direction contained in item seventeen to appoint another executor cannot now be complied with, because it requires the appointment to be made by the testator's executors (in the plural), and only one executor is now living. And the suggestion made in the

argument of the plaintiffs in error, that the Orphans' Court can now appoint an executor, is fallacious, for the Orphans' Court can never appoint an executor, although an administrator might be appointed by the Register, but the power to sell is not one which an administrator is authorized by the testator to exercise. He says that his executors (i. e., those known to and appointed by him), and their appointee may do so, but expressly directs them not to apply to court. It is really a trust, and, therefore, if the seventeenth item is to be construed as forbidding the action of the surviving executor, the further administration of the estate must come to a standstill forever; for only one executor survives, and the will expressly requires the executors to appoint another, that is, another executor in the place of an executor so dying or declining. Thus, in the seventeenth item, he requires the survivors "to make such conveyances and to do such acts as may invest the said substituted executor from time to time," etc. Besides, an administrator could not exercise the power which is not within the scope of the duties of one while any executor survives, and the testator is far from saying that a trustee appointed by court may exercise a power which he expressly states is to be performed without the intervention of a court by his executors. It is perfectly clear, however, from a perusal of the various passages of the will that it was the testator's intention to facilitate the administration of his estate without recourse to any court for further authority, and not in any way to limit the power of the surviving executor given by existing laws. The seventeenth item should really be read as permitting the executors to do that, which, without that clause, it might have been necessary to apply to the court to effect, and not as requiring an additional person, not known to the testator, to assist the surviving executor chosen by him in carrying out the objects of his will. If such had been the design, the disability of the surviving executor would have been clearly expressed in the same paragraph. The probable object of the testator was to guard against the possibility of having an administrator appointed by the Register in case the estate was not fully wound up prior to the death of the last executor, and was not made to secure a plurality of agents as a condition of their acting at all.

Chief Justice MERCUR delivered the opinion of the court, April 21, 1884.

We concur in opinion with the court below, that the sole surviving executor has lawful power and authority to convey title to said premises. When a devise of real estate is made to executors for the purpose of sale or otherwise, and in gen-

eral terms they are authorized to sell the same, the Act of 24th February, 1834, in clear and explicit language, gives power to the survivor or survivors to execute that power as fully as all of them might have done, when the testator has not directed otherwise. The will of James Dundas contains no language of a special character sufficient to indicate an intention to restrict the right to convey to all of his executors, nor to prevent the sole surviving executor from executing the power, in pursuance of the Act of 1834. To hold he cannot so do, would defeat the main purpose and object of the Act. While the Act of 1849 does authorize the Orphans' Court of Philadelphia, when the will has there been admitted to probate, on application of a party in interest, with the consent of the continuing executor, to appoint a trustee or trustees, in the place of those dying or ceasing to act, with the same power as those in whose stead they were appointed, yet this action is not essentially necessary to a proper exercise of the power given to the executors by the testator. Unless such appointment be actually made, the surviving executor may exercise the whole power under the Act of 1834. It follows the court correctly entered judgment in favor of the plaintiffs below on the case stated.

Judgment affirmed.